IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/03/2011

| | | |
|---|---|---|
| IN RE: | § | Case No. 10-40799 |
| TRIBECA LOFTS LP, | § | Chapter 11 |
| Debtor(s). | § | Judge Isgur |

## MEMORANDUM OPINION

This Memorandum Opinion addresses two issues. First, this opinion establishes the amount of Orix Capital Markets, LLC's claim that must be paid through a chapter 11 plan. Second, this opinion explains why approval of Tribeca's proposed disclosure statement must be denied.

### Background

Tribeca Lofts LP owns and operates an historic structure in Houston, Texas. Tribeca's building is architecturally and historically significant. The Art Nouveau-style building was constructed in 1934 for use as a printing facility. Tribeca acquired the building in 1992 and began a restoration. Since 1994, the twenty-six spaces within the building have been rented as live/work space.

In 2004, Tribeca borrowed $2,475,000.00 and secured the loan with a first lien Deed of Trust on the building. Orix holds the note and Deed of Trust. The Deed of Trust limits the use of the building to multifamily occupancy. Nevertheless, Orix and its predecessors have always been aware of the fact that the building was occupied as live/work space. Neither Orix nor its predecessors enforced the multifamily restriction in the Deed of Trust.

When the building was renovated in 1992-1994, the City of Houston did not have a permitting designation that fully encompassed the intended use of the building. Accordingly, the building was permitted for multifamily use.

1 / 12

In 2010, the City of Houston determined that the building was being utilized for a purpose that was inconsistent with its permit. Because much of the space was utilized for commercial purposes, the City of Houston required changes to the available parking at the building, changes to the electrical system, and other changes commensurate with City code requirements.

Tribeca is controlled by Randall Davis in his capacity as President of West Clay Partners, Inc., Tribeca's general partner. Davis is a very sophisticated businessman and a leading real estate developer in Houston. When the City began making demands regarding Code compliance, Davis had the savvy and wherewithal to negotiate workable arrangements with the City that minimized the impact of the City's demands. Through his efforts, the Tribeca Lofts property was saved from economic calamity.

Nevertheless, Davis's financial and business acumen comes at a price. As set forth in more detail below, there have been multiple occasions on which Davis failed fully to comply with his obligations to Orix. He now seeks equitable relief that Orix should not be able to rely on its default rights when his transgressions were, in his view, minor. Although the Court is sympathetic to Davis's position that some of Orix's legal fees were not reasonably required under the circumstances, the Court declines to exercise its equitable power to stop Orix from collecting its bargained-for default interest payments.

Tribeca has filed a plan in which it seeks to treat Orix on an unimpaired basis. As set forth in more detail below, Orix would be impaired if the proposed plan were confirmed. The Court denies approval of the proposed Disclosure Statement based on this erroneous characterization of Orix's treatment.

### The Proof of Claim Dispute

Orix claims the following:

| | |
|---|---:|
| Principal | $2,233,867.73 |
| Interest | $11,671.96 |
| Default interest | $105,364.60 |
| Legal fees and related charges | $85,401.33 |
| Yield maintenance fee | $349,875.80 |
| Other fees | $1,718.25 |
| TOTAL | $2,787,899.67 |

The Court will separately consider each of Tribeca's objections.

**Yield Maintenance**

The loan documents provide that Orix may impose a fee to maintain its overall yield in the event of a prepayment of its loan. Tribeca has neither prepaid nor proposed to prepay Orix's loan. At the April 11, 2011 hearing, the Court inquired as to how Orix could be entitled to a yield maintenance fee without a prepayment. Orix largely conceded this issue.[1] As a matter of law, the Court finds that Tribeca owes no Yield Maintenance fee to Orix. Tribeca's objection is sustained. The $349,875.80 yield maintenance fee is disallowed.

**Default Interest**

Orix alleges multiple defaults by Tribeca. Because Orix's earliest alleged default was on January 1, 2010, it has claimed default interest from January 1, 2010 through the petition date of December 3, 2010.

---

[1] It appears that Orix felt it necessary to include the yield maintenance claim in its proof of claim to deal with the possibility that a proposed plan would provide for prepayment. This inclusion is understandable, but the claim is disallowed. If an amended plan is proposed that would prepay Orix, the Court will reconsider. See 11 U.S.C. § 502(j).

After January 1, 2010, Orix continued to receive payments at the nondefault rate of interest. Month after month, Orix accepted the payments. Orix did not formally declare a default until September 2010 when Tribeca was late on its monthly installment payment. Nevertheless, long before September 2010, Orix was aware of the defaults that it now alleges had arisen in January 2010. Orix was meeting with Tribeca about the defaults and was substantially involved in the issue long before September 2010.

Under Texas law, waiver arises when a party intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *Sun Exploration & Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex. 1987). Relinquishment of the right may be determined by silence: "Silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to prove waiver." *Tenneco Inc. vs. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). In *Tenneco,* the Court considered whether the acceptance of continued benefits under a contract—after becoming aware of the alleged default—constituted a waiver. *Id.* In this case, Orix continued to accept payments after it was aware of the City's allegations that the property failed to meet the current City Code. The Court finds that Orix waived this default.

However, in September 2010, a new default arose and there was no waiver. By the Fall of 2009, Orix and Tribeca were on uncordial terms. Tribeca was not in current compliance with City Codes and both Davis and Tribeca's loan officer (Maher) were in obstinate moods. Tribeca requested a loan forbearance from Orix and Orix agreed to enter forbearance negotiations. However, the negotiations were subject to a formal agreement. Under the terms of the negotiating agreement, Tribeca was required to continue to make timely loan payments and could not rely on any informal understanding with respect to forbearance.

Tribeca's September monthly note payment was due to Orix on September 1. Tribeca did not make the September 1 payment. The note and deed of trust, read together, provide a six-day grace period: It is an Event of Default if "any portion of the Debt is not paid prior to the seventh (7th) calendar date after the same is due." See Article 8.1(a) of Deed of Trust. Davis, acting for Tribeca, took the risk that he could continue negotiations with Orix and that they would give him some form of warning before exercising their contractual rights.

Although Tribeca was entitled to notice and an opportunity to cure some defaults (See Article 8.1(o) of the Deed of Trust), a failure to make a monthly installment of principal and interest prior to the expiration of the grace period gave rise to a default for which no notice was required. Tribeca argues that it is unreasonable for the Court to enforce the provision; the Court disagrees. The parties agreed on a grace period. The parties agreed on matters for which notice was to be given. The parties are very sophisticated. Tribeca was on clear notice that Orix was demanding strict compliance with the loan documents.

Tribeca asks the Court to recognize that it may hold equitable powers under Texas law to avoid inequitable conduct by a lender that results in an untoward acceleration. The Court agrees that Texas law so holds. *Trickey v. Gumm,* 632 S.W.2d 167 (Tex. Civ. App.—Waco 1982, no writ). However, the facts of this case do not justify a departure that would stop Orix from obtaining the benefit of its bargain. Orix's insistence on performance in accordance with its loan documents is not inequitable.

The Court has concluded that the first enforceable default occurred on September 7, 2010. Default interest will be allowed from September 8, 2010 through December 3, 2010, totaling $22,622.81.

**Interest**

Tribeca alleges that it has now paid the $11,671.96 of nondefault interest as part of its first postpetition payment. The allocation of postpetition payments will be the subject of any confirmed plan. The regular interest was owed as of the petition date and constitutes a valid claim. Any objection is overruled.

**Legal fees and Related Charges**

Based on the evidentiary record, the Court concludes that the proper allocation of the $85,401.03 in legal fees and related expenses incurred by Orix can be considered in the following categories:

| | |
|---|---:|
| Survey and appraisal fees | $12,850.00 |
| Legal fees for acceleration and foreclosure | $6,925.29 |
| Legal fees for City Code and Parking issues | $27,701.14 |
| Legal fees for guarantor suit | $17,313.21 |
| Legal fees for Receivership Application | $17,313.21 |
| Travel expenses | $2,192.37 |
| REMIC related legal fees | $500.00 |
| Other | $605.81 |
| TOTAL | $85,401.03 |

In general, Orix's documents require Tribeca to reimburse Orix for Orix's reasonable legal fees. The issue before the Court is whether the above referenced fees are reasonable. To the extent that the fees are reasonable and allowed under the parties' agreements, they are recoverable under § 506 of the Bankruptcy Code. In determining whether fees are reasonable, the Court looks to federal law on the reasonableness of the fees. *In re Hudson Shipbuilders, Inc.,* 794 F.2d 1051, 1057 (5th Cir. 1986). Although the Fifth Circuit does not appear to have addressed the issue, the Eleventh Circuit holds that this is true whether the fees are incurred prepetition or postpetition. *In re Welzel,* 275 F.3d 1308, 1314 (11th Cir. 2001).

Nevertheless, the fees at issue in this case were all incurred prepetition. Because there is not a substantial difference between Texas and Federal law on the evaluation of the reasonableness of the fees, this Court need not specifically address the issue.

Under Federal law, the Court must determine whether the creditor took the kind of actions that similarly situated creditors might reasonably conclude should be taken. *In re Valdez,* 324 BR 296, 300 (Bankr. S.D. Tex. 2005).

As this Court has previously written:

> Some courts use a standard of "commercial reasonableness" under § 506. S*ee, e.g., In re Minnesota Distillers, Inc.*, 45 B.R. at 135; *In re Hart Ski Mfg. Co., Inc.,* 9 B.R. 397, 400 (Bankr.D.Minn.1981). The Eight Circuit simplifies this test to simply consider whether the action was "prudent"—believing that "commercially reasonable" is encompassed in such a standard. See, e.g., *In re Cushard,* 235 B.R. at 907; *In re Brunel*, 54 B.R. at 465; *In re QPL Components, Inc.*, 20 B.R. 342, 345 (Bankr.E.D.N.Y.1982)(stating—under an evaluation of § 506(a)—that commercial reasonableness is achieved by evaluating whether a prudent businessman would employ such tactics). This Court agrees with the Eighth Circuit and holds that the standard is "prudent."

*Id.* at 301.

Under Federal law, this Court will apply the prudence standard when evaluating the reasonableness of legal fees in support of actions taken by a secured creditor.

It is well settled in Texas law that the test for evaluating contractual attorneys fees is whether the amount is "reasonable under the circumstances." *See, e.g., RepublicBank Dallas, N.A. v. Shook,* 653 S.W.2d 278, 282 (Tex. 1983); *Hernandez Construction & Supply Co. v. Nat'l Bank of Commerce,* 578 S.W.2d 675, 676-77 (Tex. 1979).

The Court sees little distinction between determining what a prudent lender's fees would be and what fees are "reasonable under the circumstances."

To determine whether the fees are reasonable, the Court must examine the highly unusual facts of the case. Tribeca contends that Orix was wholly unreasonable in its conduct in this case.

The Court finds that Orix was overzealous at times, but that a substantial portion of its fees are reasonable.

When considering whether to allow default interest (set forth above), the Court detailed the circumstances that gave rise to Tribeca's default and to the acceleration of the debt. By September 7, 2010, Tribeca's debt to Orix was in default and the loan was accelerated. It was reasonable and prudent for Orix to incur legal expenses. Nevertheless, Orix was not entitled to incur needless legal expenses nor to engage in wasteful or harassing litigation tactics.

Having accelerated the note, Orix demanded payment and proceeded with foreclosure when Tribeca failed to pay the accelerated debt. It claims $6,925.29 in legal fees related to acceleration and foreclosure. The Court finds Orix's conduct to be prudent and commercially reasonable under the circumstances. These fees are allowed.

Orix also claims $27,701.14 for dealing with the City Code violations. These included the issue of whether there were an adequate number of parking spaces at the building. The Court is concerned with the magnitude of these fees. Although the City alleged Code violations, it was quickly apparent that the Code violations were not of the type that reflected poor maintenance or operation of the property. The violations were longstanding violations because of the usage characteristics of the property. As set forth above, the property had originally been permitted as a multifamily property even though Orix and the City were aware of its mixed use. Under the circumstances, Orix (believing that it was spending Tribeca's funds) overreacted. The Court reduces the fees to a more reasonable $15,000.00.

Orix incurred $17,313.21 in prosecuting a lawsuit against the guarantors. It is unambiguous to the Court that Orix is pursuing the guarantor to put pressure on the Debtor. Orix is within its legal rights to do so. However, the purpose of the pressure is unrelated to

preservation of the property or to the ultimate collection of the debt. On that basis alone, the Court finds that the fees are not reasonable. Orix is using the Guarantor lawsuit to put pressure on the Debtor's management rather than as an independent way to collect the Debt. When Orix's representative met with the Guarantor, she made clear by her statements how Orix intended to conduct itself in its collection efforts.[2] The Court will not reward those efforts with legal fees.

Moreover, the Court has concluded that Orix's loan documents (i) do allow the legal fees incurred against Tribeca to be charged against the guarantor; but (ii) do NOT allow the legal fees incurred against the guarantor to be charged against Tribeca.

Orix makes a valiant attempt to reconcile its guaranty charges with its loan documents. There is no specific provision in the note or the deed of trust that allows the collection of legal fees incurred against the guarantor to be sought against the primary obligor. Orix's argument is based on its interpretation of paragraph 3.1(b) of the Deed of Trust that allows Orix to collect attorneys fees incurred under its "Other Loan Documents." In order to determine whether Orix's position is correct, the Court must parse the document.

"Other Loan Documents" are "all and any of the documents other than the Note or this Security Instrument now or hereafter executed by Borrower and/or others and by or in favor of Lender in connection with the creation of the Obligations, the payment of any other sums owed by Borrower to Lender or the performance of any Obligations." The term "Obligations" only refers to the obligations of the Borrower. *See* § 2.3 of Deed of Trust. The "payment of any other sums" is also limited to payments by the Borrower, not the guarantor. Accordingly, the only argument that Orix can make is that the Guaranty was executed by "others" and in favor of the

---

[2] Her comment was vulgar and will not be repeated here. The undisputed record is clear.

Lender in connection with the creation of the Obligations.

One of the fundamental concepts in surety law in bankruptcy is that the suretyship obligation arising under a guaranty is independent of the primary obligation of the debtor. Commons West Office Condos, Ltd. v. Resolution Trust Corp., 5 F.3d 125, 128 (5th Cir. 1993). In this case, the guaranty was not required for the creation of the Obligations. Indeed, the guaranty is independent of the Obligations. Section 2.4 of the Guaranty provides that the Guaranty remains in force even if Tribeca's obligations are deemed invalid.

The Court concludes that Orix could have included the Guaranty in its definition of Other Loan Documents, but failed to do so. The Guaranty is an obligation that exists independently of the creation of the debt held by Orix against Tribeca. Legal fees incurred in prosecution against the Guarantor will not be allowed.

Orix also seeks $17,313.21 in fees for the receivership portion of the lawsuit. Orix's receivership concerns primarily relate to the City Code violations. As set forth in detail above, the Court concludes that Orix's receivership concerns were blown out of reasonable proportion to the problems being addressed. Orix's overly aggressive behavior was not prudent under the circumstances. Tribeca was itself aggressively addressing the City Code issues. The Court allows $9,000.00 as a reasonable amount in this area.

The balance of Orix's fees and expenses appear reasonable.

Accordingly, the Court allows Orix's claim as follows:

| CATEGORY | AMOUNT SOUGHT | AMOUNT ALLOWED |
|---|---|---|
| | | |
| Principal | $2,233,867.73 | $2,233,867.73 |
| Interest | $11,671.96 | $11,671.96 |
| Pre-petition default interest | $105,364.60 | $22,622.81 |
| Yield maintenance fee | $349,875.80 | $0.00 |
| Other fees | $1,718.25 | $1,718.25 |

| CATEGORY | AMOUNT SOUGHT | AMOUNT ALLOWED |
|---|---:|---:|
| Legal fees—acceleration and foreclosure | $6,925.29 | $6,925.29 |
| Legal fees—City Code and parking | $17,701.14 | $15,000.00 |
| Legal fees—guarantor suit | $17,313.21 | $0.00 |
| Legal fees—receivership | $17.313.21 | $9,000.00 |
| Other fees | $16,148.18 | $16,148.18 |
| TOTAL | $2,760,603.683 | $2,316,954.22 |

For the purposes of plan confirmation, Orix has an allowed claim of $2,316,954.22.

**The Impairment Issue**

Tribeca's proposed plan seeks to treat Orix's claim as not impaired. Impairment is defined in § 1124 of the Bankruptcy Code. To qualify, Orix's treatment must either:

1. Leave all of Orix's state law rights intact; or

2. Cure any default to Orix, reinstate the maturity of the Orix debt, compensate Orix for certain damages, and not otherwise alter any of Orix's state law rights.

11 U.S.C. § 1124.

The proposed plan fails the foregoing test on a number of fronts.

First, the proposed plan requires Orix to dismiss its guaranty litigation against Randall Davis. This is a modification of Orix's state law rights against Davis and results in impairment. *See* § 6.1.2(B).

Second, the proposed plan deems all interest as paid through January 31, 2011. This precludes Orix from recovering its default interest and is an impairment. *See* § 6.1.2. Orix's prepetition default interest constitutes a part of its claim. *In re Moody Nat. SHS Houston H, LLC,* 426 B.R. 667 (Bankr. S.D. Tex. 2010).

Third, the proposed plan fails to establish how Tribeca will cure the nonmonetary defaults under the Deed of Trust. The property is not yet fully in compliance with City Code. The plan, if it is to result in an absence of impairment, must specify the cure and provide a time

frame within which the cure will occur.

Because the disclosure statement improperly characterizes Orix's claim as not impaired and fails to provide for Orix's full claim as allowed above, the Court denies approval of the proposed disclosure statement.

## Conclusion

The Court gives Tribeca until June 30, 2011 to file an amended plan and disclosure statement that is consistent with this opinion.

SIGNED **June 2, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE