

ENTERED
08/30/2011

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 10-40799 |
| TRIBECA LOFTS LP, | § | Chapter 11 |
| Debtor(s). | § | Judge Isgur |

## MEMORANDUM OPINION

On August 16, 2011, the Court made certain oral findings and conclusions on the record. This memorandum opinion supplements those findings and conclusions. If there is an inconsistency, this memorandum opinion controls.

### Background

Tribeca Lofts LP ("Tribeca") owns and operates an historic structure in Houston, Texas. In 2004, Tribeca borrowed $2,475,000.00 and secured the loan with a first lien Deed of Trust on the building. Orix holds the note and Deed of Trust. The Deed of Trust limits the use of the building to multifamily occupancy. Nevertheless, Orix and its predecessors have always been aware of the fact that the building was occupied as live/work space. Neither Orix nor its predecessors enforced the multifamily restriction in the Deed of Trust.

When the building was renovated in 1992-1994, the City of Houston did not have a permitting designation that fully encompassed the intended use of the building. Accordingly, the building was permitted for multifamily use. In 2010, the City of Houston determined that the building was being utilized for a purpose that was inconsistent with its permit. Because much of the space was utilized for commercial purposes, the City of Houston required changes to the available parking at the building, changes to the electrical system, and other changes commensurate with City code requirements.

Tribeca is controlled by Randall Davis in his capacity as President of West Clay Partners, Inc., Tribeca's general partner. Davis is a very sophisticated businessman and a leading real estate developer in Houston. When the City began making demands regarding Code compliance, Davis had the savvy and wherewithal to negotiate workable arrangements with the City that minimized the impact of the City's demands. Through his efforts, the Tribeca Lofts property was saved from economic calamity.

Tribeca filed for bankruptcy in July 2010. The battle between Tribeca and Orix has centered upon Orix's treatment under the plan and Orix's ability to pursue Mr. Davis, as guarantor, outside of bankruptcy. Mr. Davis's testimony at the August 16, 2011 hearing reinforced what this Court already suspected: Orix is pursuing the Mr. Davis, the guarantor, solely as a show of force. The uncontradicted testimony indicates: (i) the loan is fully performing; (ii) Orix refused an offer of immediate repayment without imposing a prepayment penalty; (iii) Orix is determined to pursue the guarantor (Mr. Davis); and (iv) Orix's pursuit of Mr. Davis will impair Tribeca's ability to perform under its plan. (ECF Doc. 110).

## Restrictions on Pursuit of the Guaranty

This Court is issuing an Order modifying the loan agreements pertaining to Tribeca and Orix. Included in the modification is a restriction on Orix's pursuit of its guaranty. Although the Court is not issuing an injunction, the limited restrictions have some of the characteristics of injunctive relief. Accordingly, the Court evaluates its Order in light of the standards for issuance of an injunction.

Bankruptcy courts may order injunctive relief in favor of nondebtors. *See, e.g.*, *Continental Air Lines v. Hillblom (In re Continental Air Lines, Inc.)*, 61 B.R. 758 (S.D. Tex. 1986) ("[I]njunctive relief in favor of non-debtors must be considered an extraordinary remedy

to be granted only when a significant and direct impact on the reorganization proceedings is threatened."); *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.)*, 25 B.R. 1018 (D.N.M. 1982).  The limited restrictions issued by this Court are "necessary or appropriate to carry out the provisions of this title" because without the limited restrictions, Tribeca's ability to perform under the plan would be substantially impaired.  11 U.S.C. § 105(a).  An adversary proceeding is not necessary; it may be included as part of a chapter 11 plan.  F.R.B.P. 7001(7).

Injunctive relief "granted pursuant to section 105 must be tested against the standards of Rule 65, Federal Rules of Civil Procedure, which is made expressly applicable to the bankruptcy proceedings" via Rule 7065 of the Bankruptcy Rules. *Continental Air Lines v. Hillblom*, 61 B.R. at 781. In order to issue an injunction the bankruptcy court must find "irreparable injury would result to the movant in its absence, that the threatened injury to the movant outweighs the harm that the injunction may cause to the nonmovant, that there is a likelihood of success on the merits, and that the public interest would not be adversely affected by the injunction . . . ." *Id.* at 782 (quoting *Holland America Ins. Co. v. Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).

The Court concludes Tribeca will suffer irreparable injury to its ability to perform under the plan if Orix is allowed to pursue Mr. Davis as guarantor, because Tribeca will be forced to immediately refinance its indebtedness to Orix at a tremendous cost.  Moreover, the Court concludes that pursuit of the guaranty (i) will not assist Orix economically; and (ii) in the unique situation presented to the Court, is antithetical to the prepayment penalty in Orix's note.

If Orix is successful in pursuing Mr. Davis on the guaranty, it would trigger the Debtor's obligation to pay a "yield maintenance premium" to Orix.[1]  Orix's proof of claim listed this

---

[1] The penalty is triggered by a loan prepayment, or if "Lender shall receive proceeds (whether through foreclosure or the exercise of the other remedies available to Lender under the Security Instrument or the other Loan Documents)", more than three months preceding the Maturity Date, which is February 1, 2014. (ECF Doc. 3-1 at 2-3).  Orix's

amount as approximately $350,000.00. This is an amount that would be due in addition to all principal, interest, and fees. It is unreasonable to burden Tribeca with a $350,000.00 penalty to protect Orix against prepayment, when by its guaranty suit Orix insists on receiving the prepayment. When Orix is entirely protected by full performance of Tribeca as primary obligor, and the evidence shows no reason to doubt continued full performance, Orix should not be able to impose such a penalty on Tribeca via its actions against the guarantor.

The uncontroverted testimony is that if the loan is reinstated without protections for Mr. Davis as guarantor, (i) the loan must be immediately refinanced, which would trigger the yield maintenance premium;[2] (ii) the Tribeca property would have to be sold, which would also trigger the yield maintenance premium; or (iii) the judgment would go unsatisfied, which would not trigger the yield maintenance premium but would have no valuable economic effect on Orix. (ECF Doc. 117 at 41). Mr. Davis testified that refinancing while in bankruptcy is only possible through a "lender of last resort," resulting in out-of-pocket expenses for Tribeca as well as a higher interest rate on the loan. (*Id.* at 40).[3] These expenses are in addition to the $350,000.00 "yield maintenance premium." (*Id.*). Such refinancing conditions are so disfavorable that Tribeca's ability to perform under the plan would be substantially impaired.[4] The limited

---

successful pursuit of the guarantor will result in Orix receiving funds before this three-month window, thereby triggering the "yield maintenance premium."

[2] Refinancing would pay Orix off, thereby avoiding a judgment against Mr. Davis as guarantor. It would not, however, avoid the "yield maintenance premium."

[3] Mr. Davis explained that, while Tribeca is in bankruptcy, lenders are unwilling to make favorable loans even for projects where "the loan to value [ratio] is there." (*Id.* at 39).

[4] After confirmation of the plan, all property of the estate will revest in Tribeca. 11 U.S.C. § 1141(b). Refinancing after confirmation, according to Mr. Davis's testimony, may be possible without out-of-pocket expenses or a higher interest rate for Tribeca. (ECF Doc. 117 at 39-40) ("We never should have had to come out of pocket in order to get [the loan on another property but did] because of this bankruptcy I'm in on Tribeca."). However, the refinancing must not occur before the three months preceding the Maturity Date in order to avoid the $350,000.00 "yield maintenance premium." Without the limited restrictions included in the Court's Order, Tribeca would not be able to avoid the "yield maintenance premium" because it would be forced to refinance prior to this three-month window.

restrictions imposed by the Court are necessary to prevent this injury.

The other Rule 65 elements are satisfied. The threatened injury to Tribeca outweighs the harm to Orix because the loan is fully performing and this Court found that "[t]here is no question but that the lender under 1129(b) is going to be paid in full over the life of the plan." (*Id.* at 43). Likewise, this Court found that there "is no question that this is a feasible plan." (*Id.*).[5] Finally, this Court finds that the public interest is not adversely affected by the restrictive provisions.

The limited restrictions are narrowly tailored. Orix is free to pursue its guaranty under the following circumstances:

1. If there is a default under the plan or Loan Documents, as modified by the Order Modifying Deed of Trust and Related Loan Documents.

2. If Orix can demonstrate that pursuit of the guaranty meaningfully enhances Orix's likelihood of collecting all principal, interest, and fees to which it is entitled.

3. If Orix can demonstrate that Orix's pursuit of the guaranty will not adversely affect Tribeca's performance under the plan.

There is an existing suit on the guaranty pending in the United States District Court before The Honorable Sim Lake. Judge Lake issued a summary judgment in favor of Orix, but advised the parties that he would await the outcome of the Tribeca bankruptcy case before issuing a final judgment. If Judge Lake was awaiting a determination from this Court as to the likelihood of success of Tribeca's plan, this Court is highly confident that the plan will be successful.

The Court's Order is issued with full awareness that Judge Lake's prerogatives in the

---

[5] Court have interpreted the Rule 65 requirement that the movant show a likelihood of success on the merits to require, in the bankruptcy context, that "a debtor seeking to stay an action against a non-debtor . . . show a reasonable likelihood of successful reorganization." *Solidus Networsk, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1095 (9th Cir. 2007).

lawsuit before him—and Judge Lake's authority—take precedence over this Court's Order. This Court's Order does not and is not intended to limit Judge Lake's prerogatives.

## **CONCLUSION**

The August 1, 2011 plan will be confirmed by separate order. Additionally, the Court will issue a separate Order modifying the loan agreements.

SIGNED **August 29, 2011.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE